## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

MATT BRAX,

        Plaintiff,

v.

CITY OF GRAND RAPIDS, KENT COUNTY,
MATT DZIACHAN, CHRIS BERNARDO,
KENT BERACY, BRADLEY LYONS,
STACY KUTSCHE, BECKY MCGINNIS,
and NIKALUS SHERIDAN,
in their individual and official capacities,

        Defendants.

CASE NO: 1:15-CV-01162
HON: ROBERT J. JONKER

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>SHAWN C. CABOT (P64021)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI  48386<br>(248) 886-8650<br>shawn.cabot@cjtrainor.com | VARNUM LLP<br>TIMOTHY E. EAGLE (P38183)<br>RANDALL J. GROENDYK (P37196)<br>Attorneys for Defendants Matt Dziachan,<br>Kent County, Stacy Kutsche, Bradley<br>Lyons, and Becky McGinnis, only.<br>333 Bridge Street NW<br>PO Box 352<br>Grand Rapids, MI 49504<br>616-336-6537<br>616-336-7000-fax<br>teeagle@varnumlaw.com<br>rjgroendyk@varnumlaw.com |
| CITY OF GRAND RAPIDS<br>ASSISTANT CITY ATTORNEY<br>PATRICK J. LANNEN (P35171)<br>ELLIOT JOSEPH GRUSZKA (P77117)<br>Attorney for Defendants Kent Beracy, Chris<br>Bernardo, City of Grand Rapids and Nikalus<br>Sheridan<br>300 Monroe Avenue NW<br>Grand Rapids, MI 49503-2206<br>616-456-3496<br>(616) 456-4569 fax<br>plannen@grcity.us<br>egruszka@grcity.us | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS CHRIS BERNARDO, KENT BERACY, AND NIKALUS SHERIDAN'S MOTION FOR SUMMARY JUDGMENT

1

**NOW COMES** Plaintiff, **MATT BRAX**, by and through his attorneys, CHRISTOPHER

TRAINOR & ASSOCIATES, and for his response to Defendants' Motion for Summary Judgment

states as follows:

Plaintiff denies each and every allegation contained in Defendant's Motion and Brief and

leaves them to their strict proofs.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court DENY

Defendant's Motion for Summary Judgment in its entirety for the reasons set forth in the attached

Brief.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES

**BY: /s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
(248) 698-3321 – fax
shawn.cabot@cjtrainor.com

Dated: January 26, 2017
SCC/jrr

**CERTIFICATE OF SERVICE**
I hereby certify that on January 26, 2017, I electronically filed the foregoing paper with the Clerk
of the Court using the ECF system which will send notification of such filing to the following:
***all attorneys of record.***

s/Shawn C. Cabot (P64021)
Christopher Trainor & Associates
9150 Highland Road
White Lake, MI 48386
Phone: (248) 886-8650
shawn.cabot@cjtrainor.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

MATT BRAX,

   Plaintiff,

v.           CASE NO: 1:15-CV-01162
            HON: ROBERT J. JONKER

CITY OF GRAND RAPIDS, KENT COUNTY,
MATT DZIACHAN, CHRIS BERNARDO,
KENT BERACY, BRADLEY LYONS,
STACY KUTSCHE, BECKY MCGINNIS,
and NIKALUS SHERIDAN,
in their individual and official capacities,

   Defendants.

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>SHAWN C. CABOT (P64021)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI  48386<br>(248) 886-8650<br>shawn.cabot@cjtrainor.com | VARNUM LLP<br>TIMOTHY E. EAGLE (P38183)<br>RANDALL J. GROENDYK (P37196)<br>Attorneys for Defendants Matt Dziachan, Kent County, Stacy Kutsche, Bradley Lyons, and Becky McGinnis, only.<br>333 Bridge Street NW<br>PO Box 352<br>Grand Rapids, MI 49504<br>616-336-6537<br>616-336-7000-fax<br>teeagle@varnumlaw.com<br>rjgroendyk@varnumlaw.com |
| CITY OF GRAND RAPIDS<br>ASSISTANT CITY ATTORNEY<br>PATRICK J. LANNEN (P35171)<br>ELLIOT JOSEPH GRUSZKA (P77117)<br>Attorney for Defendants Kent Beracy, Chris Bernardo, City of Grand Rapids and Nikalus Sheridan<br>300 Monroe Avenue NW<br>Grand Rapids, MI 49503-2206<br>616-456-3496<br>(616) 456-4569 fax<br>plannen@grcity.us<br>egruszka@grcity.us | |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS CHRIS BERNARDO, KENT BERACY, AND NIKALUS SHERIDAN'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**I.**    **OVERVIEW** ...................................................................................................... 7

**II.**   **STATEMENT OF FACTS** ............................................................................... 7

**III.**  **CORROBORATING FACTS** ......................................................................... 10

**IV.**   **LAW AND ARGUMENT** ............................................................................... 12

   **A.**    **Standard of Review** ................................................................................ 12

   **B.**    **Count I: Fourth Amendment Excessive Force Claim** ............................ 13

   **C.**    **Count II: Fourteenth Amendment excessive force claim** ....................... 22

**V. CONCLUSION** ................................................................................................ 25

## STATEMENT OF ISSUES PRESENTED

1. Did Defendant Beracy use excessive force against Plaintiff during arrest in violation of both Plaintiff's constitutional rights under the 4th amendment and therefore prevents Defendant Beracy from asserting qualified immunity?

   **Plaintiff Answers: YES**
   Defendants Answer: no

2. Did Defendants Beracy, Bernardo, and Sheridan use excessive force against Plaintiff during arrest in violation of both Plaintiff's constitutional rights under the 4th and the 14th Amendment and therefore prevents Defendant Beracy from asserting qualified immunity?

   **Plaintiff Answers: YES**
   Defendants Answer: no

3. Did Defendants Beracy and Bernardo fail to fail to intervene to protect Plaintiff from the use excessive force against Plaintiff in violation of both Plaintiff's constitutional rights under the 4th and the 14th amendment and therefore prevents Defendant Beracy from asserting qualified immunity?

   **Plaintiff Answers: YES**
   Defendants Answer: no

## **TABLE OF AUTHORITY**

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).................................................. 12

*Baker v. City of* Hamilton, 471 F.3d 601,607-08 (6th Cir. 2006).................................................. 14

*Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 404, 412 (6th Cir. 2015) ........................... 17

*Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982 ....................................................................... 20

*Carl v. Cnty of Muskegon*, 2016 U.S. Dist. LEXIS 110808, ......................................................... 22

*Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986) ...................................................................... 12

*Coley v. Lucas Cnty. .*" 7999 F.3d 530, ....................................................................................... 18

*Estelle v. Gamble* 429 U.S. 97. ..................................................................................................... 23

*Farmer v. Brennan,* 511 U.S. 825. 835 – 837 ............................................................................... 23

*Flyod v. City of Detroit* 518 F.3d 398, 406 (6th Cir. Mich. 2008)............................................... 20

*Graham v. Connor*, 490 U.S. 386. ................................................................................................. 13

*Grawey v. Drury*, 567 F.3d 302 .................................................................................................... 15

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ........................................................................... 21

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ..................................................................................... 21

*Howard v. Calhoun Co.*, 148 F. Supp 2d 883, 887 (W.D. Mich. 2001) ......................................... 12

*Johnson v. Jones*, 515 U.S. 304 (1995)......................................................................................... 22

*Kent v. Oakland Cnty.*, 810 F.3d 384............................................................................................ 20

*Kingsley v. Hendrickson* 135 S. Ct 2466, 2473 (2015)............................................................ 16, 22

*Laury v. Rodriguez, 2016 U.S. App. LEXIS 15872* ...................................................................... 18

*Lyons v. City of Xenia, . 417 F.3d 565 (6th Cir. 2005)* ................................................................ 14

*Martin v. City of Broadview Heights*, 712 F.3d at 958 ................................................................. 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) .................... 12

*Ortiz v. Kazimer*, 811 F.3d 848, 852 (6th Cir. 2016)................................................................... 19

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009)............................................................................ 22

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ................................................................................... 21

*Sheehan v. Noble County Sheriff's Dep't*, 2016 U.S. Dist. LEXIS 168010 ................................. 16

*Smith v. City of Hemet*, 394 F.3d 689 .......................................................................................... 15

*Smith v. Freeland*, 954 F.2d 343, 345-347 (6th Cir. 1992).......................................................... 23

*Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).............................................................................. 21

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)..................................................................... 20

**Statutes**

42 U.S.C.§ 1983................................................................................................................................ 9

**Rules**

Fed. R. Civ. Proc. 56........................................................................................................................ 8

## I.   <u>OVERVIEW</u>

This is a civil rights/excessive use of force case brought pursuant to 42 U.S.C. §1983. Defendants used excessive force against Plaintiff, violating his Fourth Amendment right to be free from unreasonable searches and seizures, during and subsequent to an arrest which occurred on December 7, 2013. During this incident, Defendants unnecessarily and without any lawful justification punched Plaintiff in the face, causing a black eye; threw him to the ground in two instances; choked him; and kneeled on his back with intense pressure, causing Plaintiff to defecate on himself twice. In light of the arguments, evidence, and case law set forth herein, Plaintiff respectfully requests that this Honorable Court DENY Defendant's Motion in its entirety.

## II.   <u>STATEMENT OF FACTS</u>

On December 7, 2013 Plaintiff drove to Grand Rapids from the Chicago area with friends. **(Exhibit A, Plaintiff's Deposition, p. 71)**. Plaintiff and his friends had dinner at a local restaurant and eventually arrived at Tavern on the Square Bar, which is located on Ionia Avenue in Grand Rapids, Michigan. **(Ex. A, p. 77)**. Later that night, Plaintiff exits Tavern on the Square after being assisted out of the establishment by a bouncer **(Ex. A, p. 81).** While Plaintiff is standing outside the bar, with his back to the street, Defendant Kent Beracy approached Plaintiff from behind attempting to throw him to the ground. **(Ex. A, p. 82)**. **Plaintiff did not and could not have seen Defendant Beracy approach. At this time, Plaintiff did not know Defendant Beracy was a police officer nor was he ever advised of the same. (Ex. A, pp. 87- 88)**. In fact, Defendant Beracy stated in his deposition that he did not announce himself as a police officer or give verbal commands before making contact with Plaintiff. **(Exhibit C, Defendant Beracy's Deposition, p. 29)**.

Upon turning around, Plaintiff realized that the unknown attacker, Defendant Beracy, was a police officer. **(Ex. A, pp. 87-88)**. **Consequently, Plaintiff put his hands in the air immediately in an obvious sign of surrender. (Ex. A, p. 88)**. **Despite Plaintiff's surrender, Defendant Beracy punched Plaintiff in the face with a closed fist. (Ex. A, p. 88). Recognizing that Defendant Beracy was a police officer, Plaintiff made no move to defend himself and remained with his hands in the air. (Ex. A, p. 89).** Seconds later, Defendant Beracy immediately moves in to control Plaintiff's arms, without giving Plaintiff time to gain his composure. **(Ex. C, p. 35)**. Defendant Beracy proceeds to shove Plaintiff toward a taxi and throws Plaintiff to the ground. **(Ex C, p. 41)**. Defendant Beracy placed Plaintiff's arms behind his back and placed him in handcuffs while forcefully jamming his knee into Plaintiff's back for no justifiable reason. **(Ex. A, p. 91)**. Plaintiff asked Defendant Beracy to stop because he felt he was going to defecate due to the intense pressure on his back. **(Ex. A, p. 91)**. Defendant Beracy proceeded to press his knee even harder into Plaintiff's back, causing Plaintiff to actually defecate on himself. **(Ex. A, pp. 91, 120)**. Plaintiff was then placed in the back of the squad car, and he was taken to the Grand Rapids Police Department (GRPD) for photographing and a brief interview with GRPD Sergeant Matt Ungrey **(Ex. C, p. 53-55, Exhibit K, photo of Plaintiff taken by Sergeant Ungrey)**. Afterward, Plaintiff was taken to the Kent County Correctional Facility ("KCCF") by Defendant Beracy **(Ex. A, p. 92)**.

Upon arriving at the KCCF, Defendant Beracy parked in the sally port and escorted Plaintiff into the jail. **(Ex. C, p. 59-60)**. While being escorted into the jail Defendant Beracy stated that Plaintiff's demeanor had changed and made no attempt to try and break away. **(Ex. C, p. 60)**. Plaintiff was taken to the booking room by Defendant Beracy where he was placed at the end of the table. **(Ex. C, p. 63)**. In the video, Plaintiff can be seen standing at the end of the table while

Defendant Beracy conducts the intake process. **(Ex. B 23:40:15-23:42:11).** Eventually, the video shows that Defendant Sheridan says something to Plaintiff and in response Plaintiff calmly walks over to Defendant Sheridan. **(Ex. B, 23:42:08).** At this point, Plaintiff was forced onto the booking room table by Defendant Niklaus Sheridan, who can be seen placing his hands around Plaintiff's neck. **(Ex. B, 23:42:16).** Defendants Chris Bernardo and Defendant Beracy eventually approached and forced Plaintiff's handcuffed hands toward his head, choking him. **(Ex. A, p.103)**. While being forced onto the table, Plaintiff reported that he was in a daze from being choked and was going in and out of consciousness. **(Ex A. p. 103)**.

Shortly after, Defendant Kutsche and Defendant Dziachan entered the booking room and joined in forcing Plaintiff onto the table. **(Ex. B at 23:42:39).** Defendants then slammed Plaintiff to the floor, laid Plaintiff on his stomach, and kneed Plaintiff in the back causing Plaintiff to defecate on himself again. **(Ex. A, p. 120)**. Defendant Lyons subsequently entered the booking room and joined the officers forcing Plaintiff onto the floor. **(Ex. B at 23:44:32).** Defendants Kutsche, Dziachan and Lyons then carried Plaintiff out of the booking room, prone, with his arms behind his head by and his legs restrained. **(Ex. B at 23:46:09).**

Defendants Kutsche, Dziachan, and Lyons carried Plaintiff into a holding cell and placed him prone on the floor. **(Exhibit I, Video of Plaintiff in KCCF holding cell, at 23:46:16)**. Plaintiff was restrained by Defendant Lyons while Defendants Dziachan and Kutsche switched out the handcuffs placed on Plaintiff by Defendant Beracy and placed Defendant Dziachan's handcuffs on him **(Ex. I 23:47:00 to 23:48:19)**. Defendants Kutsche, Dziachan, and Lyons then pulled Plaintiff up from his position face down on the floor and forced him into a seated position on the bench in the holding cell. **(Ex. I at 23:48:32).**

### III.    CORROBORATING FACTS

**PLAINTIFF'S DEPOSITION TESTIMONY (EXHIBIT A):**
- Plaintiff's injuries included a bruised back, a black eye, and recurring headaches. **(pp. 47-48)**.
- When Defendant Beracy grabbed plaintiff from behind, Plaintiff has no knowledge Defendant was a police officer. **(pp. 83-83, 141).**
- **Defendant Beracy punched Plaintiff in the face with a closed fist. (pp. 88-89)**.
- Plaintiff was told to go around to the side of the table Defendant Sheridan was standing on. **(p. 101)**.
- Plaintiff was choked as he was forced onto the table in the booking room. **(pp. 103-104, 114, 137).**
- Plaintiff wass forced from the table to the floor. **(pp. 107, 113).**
- At various points, several of the Defendants kneeled on Plaintiff's back. **(p. 112).**
- Plaintiff defecated in his pants for the second time because of the force being used against him**. (p. 121)**.
- Plaintiff was not allowed to shower until the next morning. **(p. 125)**.

**DEFENDANT BERACY'S DEPOSITION TESTIMONY (EXHIBIT C):**
- Defendant Beracy notices a commotion outside of Tavern on the Square and sees Plaintiff flailing his arms. (p. 22).
- Plaintiff did not realize Defendant Beracy was police until after Plaintiff spun out of Defendant Beracy's bear-hug. (p.32).
- Plaintiff never attempted to punch or strike Defendant Beracy. (pp.38-40).
- Defendant Beracy took Plaintiff to the ground and placed his knee in Plaintiff's back. (p. 42).
- Plaintiff defecated in his pants for the first time while Defendant Beracy had his knee in Plaintiff's back. (p. 49).
- Plaintiff does not resist Defendant Beracy's efforts to pat him down. (p. 46).
- Plaintiff was not physically violent while seated in the back of the police cruiser. (p. 53).
- Defendant Beracy drives from City of Grand Rapids Police department to Kent County Correctional Facility. (p. 59).
- Plaintiff is standing at the far end of the table in the booking room. Defendant Beracy is to his left. (p.63).
- Plaintiff does not exhibit any physical manifestations of anger. (pp. 67-68).
- Plaintiff is forced over the table with his arms brought toward the back of his neck. (p. 72).
- Plaintiff is brought to the ground by Defendant officers of the Kent County Correctional Facility and Defendants Sheridan and Beracy. (pp.75-76).
- Defendant Beracy places his knee in Plaintiffs back, Plaintiff defecates on himself for the second time. (p.76-77).
- Plaintiff is carried out of the booking room prone with his legs up to a holding cell. (pp.78-79).

**DEFENDANT BERNARDO'S DEPOSITION TESTIMONY (EXHIBIT D):**
- Defendant Bernardo notices by smell that Plaintiff had likely defecated on himself (p. 14).
- Plaintiff is standing at the far edge of the table in the booking room on the short side (p.14-15).
- Plaintiff is forced onto the booking room table by Defendant Sheridan who places one hand on the back of Plaintiff's neck (pp. 17-18).
- Defendants Beracy and Bernardo lift Plaintiff's arms towards the ceiling while Defendant Sheridan holds Plaintiff's torso onto the table (p. 19).
- Plaintiff is forced to the ground (p. 21).
- Plaintiff is carried out of the booking room to a holding cell (p.24).

- Plaintiff was placed in a holding cell (p. 25).

**DEFENDANT SHERIDAN'S DEPOSITION TESTIMONY (EXHIBIT E):**
- Defendant Sheridan bends Plaintiff's torso over the booking room table (pp.30-32).
- Defendant Sheridan states that video shows him and Defendant Beracy separately placing their hands on Plaintiff at separate times (pp., 34-35, 48-49).
- Defendant Sheridan states that video shows Defendants Beracy and Bernardo bringing Plaintiff's hands toward the back of his neck (p. 36).
- Defendant Sheridan states that video shows Plaintiff being taken to the ground (p.44).

**DEFENDANT DZIACHAN'S DEPSITION TESTIMONY (EXHIBIT F):**
- Plaintiff is standing at the far edge of the table with Defendant Beracy to his left (p.25).
- Defendants Dziachan and Kutsche enter the booking room (p. 28).
- Defendant Dziachan was aware by sight and smell that Plaintiff had defecated on himself. (p. 39).
- Defendant Dziachan makes the call to take Plaintiff to the ground (p. 39).

**DEFENDANT KUTSCHE'S DEPOSITION TESTIMONY (EXHIBIT G):**
- Defendants Dziachan and Kutsche enter the booking room (p. 16).
- Defendant Kutsche was told prior to performing a pat search that Plaintiff had defecated on himself (p. 20)
- Defendant Kutsche performs a pat search of Plaintiff (p. 18).
- Plaintiff is taken to the ground (p. 20)
- Plaintiff is carried by his arms and legs into the holding cell and placed on the floor of the holding cell on his stomach (pp. 22-24).

**DEFENDANT LYONS' DEPOSITION TESTIMONY (EXHIBIT H):**
- When Defendant Lyons' enters the booking room Plaintiff is being restrained on the floor (p. 13).
- Defendant assisted Defendants Kutsche and Dziachan in carrying Plaintiff to the holding cell by his arms and legs (pp. 15-16).

**VIDEO OF PLAINTIFF IN KENT COUNTY CORRECTIONAL FACILITY BOOKING ROOM (EXHIBIT B):**
- 23:42:17: Defendant Sheridan forces Plaintiff onto the table, placing his hands on Plaintiff's head and neck.
- 23:42:21: Defendant Beracy forces Plaintiff onto the table, placing his right hand around Plaintiff's neck.
- 23:44:17: Defendant Dziachan places his right arm around Plaintiff's neck and his left hand on Plaintiff's head.
- 23:44:20: Defendant Beracy places his arms around Plaintiff's head and neck.
- 23:44:27: Defendant Sheridan has his arms around Plaintiff's head and neck and puts the weight of his torso on Plaintiff's head and neck.
- 23:44:29 – 23:45:54: Defendant Sheridan has his arms on the back of Plaintiff's head and neck and lays the weight of his torso on Plaintiff's head and neck.

## IV.  LAW AND ARGUMENT

### A.  Standard of Review

Pursuant to Fed. R. Civ. Proc. 56 a party make a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When evaluating a motion for summary judgment, the court must look beyond the pleadings and consider all facts in evidence to determine whether there is a genuine issue of material fact. *Howard v. Calhoun Co.*, 148 F. Supp 2d 883, 887 (W.D. Mich. 2001).

The moving party bears the initial burden of proving that their motion is warranted by identifying what portions of the nonmoving party's case establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986). The court must then consider all facts in the record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986). In the end, the court may only grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita supra* at 587. Ultimately, the court must decide whether the evidence presented raises a sufficient disparity to submit to a jury or whether the issue is so one-sided that one party obviously prevails as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

In this case, Defendants cannot meet their burden of proving that no genuine issue of material fact as to the claims asserted by Plaintiff exists for trial. The depositions and other evidence submitted clearly illustrate that Defendants and Plaintiff are in significant disagreement as to many of the material facts of Plaintiff's claims. Considering all facts in the record in the light

most favorable to Plaintiff, the Court must therefore reasonably decide in Plaintiff's favor. Therefore, Defendant's Motion for Summary Judgment must be DENIED in its entirety.

**B.  Count I: Fourth Amendment Excessive Force Claim**

Defendants have erroneously argued that Plaintiff's clearly established right to be free from excessive force was not violated because any and all force used by Defendants was reasonable. This is not supported by the record. Again, for reasons set forth herein, Defendants arguments must fail.

**1.  Defendant's use of force was unreasonable given the totality of the circumstances.**
**a.  Fourth Amendment Violations Outside of Tavern on the Square**

Contrary to Defendants argument, Defendant Beracy's use of force when arresting Plaintiff outside of Tavern on the Square was not reasonable under the *Graham* factors used to evaluate reasonableness. Those factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386.

Defendant Beracy argues that there was probable cause to arrest Plaintiff for assault. Defendant also points to the scene observed outside the bar where he saw Plaintiff flailing his arms in an attempt to get past people. **(Ex. C, p. 23)**. However, Defendant Beracy stated in his deposition that Plaintiff was not aggressively punching anyone he never saw Plaintiff ball his hands up into a fist. **(Ex. C, p. 23 - 24)**.

Moreover, Plaintiff did not pose a threat to Defendant Beracy at the time he grabbed Plaintiff from behind. This is evidenced by the fact that Plaintiff was not, and could not have been, aware of Defendant Beracy's presence at the time Defendant grabbed him in a bear hug **(Ex. A, pp. 87 - 88)**. This is evidenced by the fact that upon pulling up to the bar, Defendant Beracy did

13

not activate his lights, siren, bullhorn, or PA system, or otherwise make his presence known. **(Ex. C, p. 21).** Defendant points to Plaintiff's reaction of spinning out of his grasp as evidence of the threat Plaintiff posed. However, Defendant Beracy admits that after Plaintiff spun out of his grasp, Plaintiff stood opposite him but seemed dazed and was not using any active aggression toward Defendant Beracy **(Ex. C, p. 33 - 34).  Nonetheless, Defendant Beracy punched Plaintiff in the face with a closed fist and immediately moved in to restrain Plaintiff and brought Plaintiff to the ground. (Ex A, p. 88-89).** Moreover, Plaintiff has testified that upon realizing the unknown person he spun away from was an officer he immediately put his hands up in an obvious sign of surrender. In *Lyons v. City of Xenia*, . 417 F.3d 565 (6th Cir. 2005),  the Sixth Circuit held that "tackling a suspect has been found to rise to the level of excessive force where 'the claimants did not pose a tenable threat to the officer's safety' or where the tackling was followed by additional uses of force such as…repeatedly using punishing pain compliance techniques. In the instant case, Plaintiff did not pose a threat to Defendant Beracy as he put his hands up in an obvious sign of surrender as soon as he realized Defendant Beracy was a police officer. In light of this fact, Defendant Beracy's use of force was obviously excessive as set forth in *Lyons*.

Defendant Beracy also cites *Martin v. City of Broadview Heights*, 712 F.3d at 958 as support for the argument that the spin move by Plaintiff could be seen as resistance. However, Defendant Beracy's punching of Plaintiff and subsequent takedown of Plaintiff was nonetheless excessive. The *Martin* case cites the case of *Baker v. City of* Hamilton, 471 F.3d 601,607-08 (6th Cir. 2006) which held that "a suspect's attempt to evade arrest…did not preclude his claim of excessive force or justify the officer's subsequent baton strikes." Similarly, Plaintiff's spin move does not justify Defendant Beracy punching plaintiff or taking him to the ground and kneeing him in the back hard that Plaintiff defecated on himself. Especially in light of Plaintiff's obvious signs

14

of submission once he realized Defendant Beracy was a police officer. In *Grawey v. Drury*, 567 F.3d 302, the Sixth Circuit held that "the general consensus among our cases is that officers cannot use force…on a detainee who has been subdued, is not told he is under arrest, and is not resisting arrest."

In *Smith v. City of Hemet*, 394 F.3d 689, the 9th circuit court of appeals held that "an additional factor we may consider in our *Graham* analysis is the availability of alternative methods of capturing or subduing a suspect." In the *Smith* case, defendant police officers used pepper spray, physical takedowns, and a canine attack to subdue the plaintiff. *Id.* The Court in *Smith* rejected defendant's summary judgment motion, holding that a rational jury could rely on evidence of alternative, less excessive means, in determining whether an officer's use of force was reasonable. *Id* at 31-32. *Smith* is analogous to the case at hand, where Defendant Beracy chose to subdue Plaintiff through a close-handed punch, take-down, and knew to the back before using less excessive means such as officer presence or verbal commands. The *Grand Rapids Police – Manual of Procedures* (GRPD Manual) specifically outlines Officer's available responses in situations where force is warranted. **(Exhibit L, Grand Rapids Police – Manual of Procedures, 9-1.3 – 9-1.5).** Defendant Beracy failed to follow these established procedures in his arrest of Plaintiff. Specifically, the first level response of officer presence, was not used as Defendant Beracy did not show, then announce his presence before using physical force against Plaintiff. The second level was also not used as Defendant did not first attempt to subdue Plaintiff through verbal commands. Instead, Defendant Beracy grabbed Plaintiff from behind without first making his presence known or administering any verbal commands. Defendant Beracy then escalated to the third level response of Physical Control by punching Plaintiff in the face with a closed hand strike and throwing Plaintiff to the ground. According to the GRPD Manual, such physical controls should

15

only be applied "when soft empty hand control has failed or the officer reasonably believes that soft empty hand control will be insufficient to establish control." **(Exhibit L, 9-1.4).**

For the foregoing reasons, Defendant Beracy's use of force was not reasonable. As such, Plaintiff's complaint should not be dismissed.

### b. Fourth Amendment violations at the Kent County Correctional Facility

Plaintiff also argues that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by Defendant's at the Kent County Correctional Facility. Excessive force claims brought under the Fourteenth Amendment are analyzed under the Fourth Amendment "objective reasonableness" test when a detainee has not yet had his probable cause hearing. *Kingsley v. Hendrickson* 135 S. Ct 2466, 2473 (2015) (see also *Laury v. Rodriguez, 2016 U.S. App. LEXIS 15872* where excessive force during the booking process is analyzed under the Fourth Amendment).

Defendants wrongly contend that the video evidence from KCCF is sufficient to resolve the ultimate dispute of fact in this case. The video is not sufficient to award the Defendants summary judgment because the lack of audio makes the video evidence inconclusive at best. The accounts of Defendants Beracy, Bernardo, and Sheridan, as to what occurred in the booking room, differ from Plaintiff's account. Therefore, the videos cannot be relied on as a basis for summary judgment. This situation is analogous to the case of *Sheehan v. Noble County Sheriff's Dep't*, 2016 U.S. Dist. LEXIS 168010. In *Sheehan*, as with this case, dash cam video recordings were the only ones that included audio as the cameras in the sally port and inside the jail do not record audio. *Id* at 20. The court in *Sheehan* held that the video evidence was not sufficient to resolve the

16

contradiction between plaintiff and defendant's version of events and thus required testimony by plaintiff and defendants in front of a jury. *Id* at 27.

The lack of audio on the video from the booking room at Kent County Correctional Facility precludes the use of the video as corroborating evidence of the Defendants testimony. There is a significant dispute of fact between Plaintiff and Defendants as to conversations that were had in the booking room. Defendants argue that Plaintiff failed to obey verbal commands and was verbally combative while standing at the table, before walking toward Defendant Sheridan with an aggressive posture that the officers recognized as indicative of an imminent attack. However, Plaintiff stated in his deposition that he walked toward Defendant Sheridan after being told by Defendant Sheridan to come over to the other side of the table. **(Ex. A, p. 101 - 102)**. This is analogous to *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 404, 412 (6th Cir. 2015) where an officer's conduct of pushing a handcuffed arrestee, who was not physically resisting at the time force was used, face-first into a wall was found to be objectively unreasonable, "notwithstanding that the arrestee had 'made verbal threats against the officers…' and was spitting on the officers." All that can be determined regarding this situation from the video is that Defendant Sheridan says something and looks in Plaintiff's direction, indicating that he was speaking to him. **(Ex. B, at 23:42:09)**. Two seconds later Plaintiff walks toward Defendant Sheridan in what appears to be a calm and complacent manner. **(Ex. B, at 23:42:11)**. It is plain that the video shows when Plaintiff begins moving toward Defendant Sheridan, he does not appear to be aggressive. **(Ex. B, at 23:42:11)**. As with Defendant Beracy's initial arrest, a reasonable officer should have first tried to gain Plaintiff's compliance through verbal commands before moving to excessive force. *Smith supra.* The video shows that this was not the case, as Defendant Sheridan escalated immediately to forcing Plaintiff on to the table and choking him.

Finally, Defendants wrongly claim that the court must conclude that Plaintiff was not choked at all. Defendants cite the video evidence and argue that none of the Defendant's place their hands around Plaintiff's neck during the whole encounter in the booking room. This assertion is not supported by a close viewing of the booking room video. In the case of *Coley v. Lucas Cnty. .*" 7999 F.3d 530, the Sixth Circuit has emphasized that "the use of a chokehold on an unresisting— and even an initially resistant-detainee violates the Fourteenth Amendment. In *Coley* the plaintiff initially squirmed around and struggled against officers at the point that force was applied. *Id* at 541. However, the Court noted that at the time, the plaintiff had been placed on a bed, handcuffed to it, and was surrounded by multiple officers. *Id.* at 541. Regardless of plaintiff's resistance, the Court held that "force as extreme as a chokehold was excessive and impermissible." *Id* at 541.

In the case at hand, Defendants claim that Plaintiff resisted officers while bent over the table and was thus taken to the ground in an effort to further control him. The case of *Laury v. Rodriguez, 2016 U.S. App. LEXIS 15872,* held that "pushing plaintiff onto a bench, choking him, and 'slamming' him onto the floor face-first" was nothing more than "gratuitously applied additional force against an individual who posed no threat to safety, did not attempt to flee, offered at most passive resistance to the officers, and was already under the officer's physical control." While Plaintiff was being forced onto the booking room table, Defendant Sheridan can clearly be seen placing his hands around Plaintiff's neck. **(Ex. B, 23:42:16).** In addition, Defendants Chris Bernardo and Defendant Beracy eventually approached and forced Plaintiff's handcuffed hands toward his head, choking him. **(Ex. A, p.103)**. Soon after, Defendants Dziachan and Kutsche enter the booking room while Defendants Sheridan, Beracy, and Bernardo are forcing Plaintiff onto the table. **(Ex. B, at 23:42:56)**. Defendant Dziachan joins in restraining Plaintiff's arms while Defendant Kutsche begins performing a pat search. **(Ex. B, at 23:42:56).** Throughout this pat

18

search, Defendant Sheridan at all times has his right hand either on the back of Plaintiff's head or Plaintiffs neck, forcing it into the table. **(Ex. B, 23:42:39-44:05).** Plaintiff stated in his deposition that he was being choked in and out of consciousness while Defendants were bending him over the table. **(Ex. A, p. 103-104)**. Defendant Sheridan, Beracy, and Bernardo, along with and Defendant Kutsche and Defendant Dziachan, eventually force plaintiff onto the ground from his position bent over the table. **(Ex. B, 23:44:16-44:31)**. During their efforts to take Plaintiff to the ground, several of the Defendants place their hand or arm around Plaintiff's neck and make knee strikes to his back. **(Ex. B, 23:44:16-44:33)**. As a result of the intense pressure the knee strikes put on his back, Plaintiff defecated on himself a second time. This type of force was found to be unreasonable in *Ortiz v. Kazimer*, 811 F.3d 848, 852 (6th Cir. 2016), where an officer continued to put pressure on the back of an already subdued arrestee.  Later, Defendant Sheridan places his hand on the back of Plaintiff's neck at 23:44:16, 44:20, and 43:40.  Additionally, Defendant Sheridan eventually puts both arms around Plaintiff's head and forces him to the ground using the weight of his body. **(Ex. B, 23:44:29)**. Defendant Sheridan continues to lay on Plaintiff's head until Plaintiff is removed from the booking room. **(Ex. B, 23:46:06)**. This is similar to *Laury* where the Court held that "an officer uses excessive force when he presses face-down a non-resisting and surrendered suspect longer than needed." *Laury supra* at 18.

 The audio evidence recorded on Defendant Beracy's body microphone supports Plaintiff's claim that he was choked. At 21:22, Plaintiff can be heard choking, followed by an undeterminable statement by a female speaker, arguably Defendant Kutsche. **(Exhibit J, Audio from Defendant Beracy's body microphone, 21:22).** After the choking noises cease, gasping and groaning can be heard coming from Plaintiff. **(Ex. J, 21:33-21:55)**. Choking can be heard again at 21:59, followed by more gasping and groaning. **(Ex. J, 21:59-22:22).**

### 2.   Failure to intervene

It has been continually emphasized that an officer is not required to have contact with Plaintiff to be liable. The Sixth Circuit has repeatedly held that police officers who stand by and do nothing while a plaintiff is subjected to excessive force can be held liable under §1983. *Turner v. Scott*, 199 F.3d 425, 429 (6th Cir. 1997). *See also Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982. Officers who fail to intervene after witnessing excessive force shall be held liable if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit* 518 F.3d 398, 406 (6th Cir. Mich. 2008) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). In *Floyd*, the Court held defendant officer liable for failing to act to protect plaintiff from another officer's use of force. *Id.* at 18. In fact, the Court went even further and stated that the defendant officer's own use of force escalated the situation by signaling to the other officer that force was called for. *Id.* at 18.

In the case at hand, Defendants Beracy, Bernardo, and Sheridan are also liable for failing to intervene on Plaintiff's behalf to protect him from harm. After entering the booking room, Defendant Dziachan joins Defendant Sheridan in restraining Plaintiff's arms while Defendant Kutsche begins performing a pat search. **(Ex. B, at 23:42:56).** Throughout this pat search, Defendant Sheridan at all times has his right hand either on the back of Plaintiff's head or Plaintiffs neck, forcing it into the table. **(Ex. B, 23:42:39 - 44:05).** At this time, Defendants Beracy and Bernardo's proximity to Plaintiff gave them the ability to intervene on his behalf. (see *Kent v. Oakland Cnty.,* 810 F.3d 384, where the Court found that an officer who was present for the majority of an incident and close enough to handcuff the plaintiff after gave rise to a jury question as to whether a reasonable officer in defendant officer's position would have taken action to

prevent the excessive force.) Defendants not only failed to intervene but actually participated in the continued use of excessive force against Plaintiff, resulting in Plaintiff being choked and hit with knee strikes so hard that he defecated on himself for a second time. Clearly, the failure of Defendants Beracy and Bernardo to intervene on Plaintiff's behalf and their subsequent participation in the continued use of force subjects them to liability under 42 U.S.C. §1983.

### 3. In light of the refuted evidence, Defendants Beracy, Bernardo and Sheridan are not protected by qualified immunity.

Qualified immunity it a **privilege** granting immunity to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining the applicability of qualified immunity at the summary judgment stage requires that the court utilize a two-pronged test. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). The first prong looks to whether the facts "[t]aken in the light most favorable to the party asserting the injury…show the officer's conduct violated a [federal right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It has been clearly established that pre-trial detainees have a right to be free from the excessive use of force by officers as set forth by the Fourth and Fourteenth Amendments. As such, the first prong is met.

The second prong looks to whether the right in questions was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The Court in *Hope* held that "for a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" "[T]he salient question … is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id* at 741.

Courts have the individual discretion as to the order in which they evaluate these two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regardless, the court in *Tolan v. Cotton* emphasized that qualified immunity cases emphasize the importance of drawing inferences in favor of the nonmoving party in summary judgment motions. As such "courts may not resolve genuine disputes of material fact in favor of the party seeking summary judgment." *Cotton, supra* at 1866. In considering whether a constitutional violation occurred, an issue of fact is created when the defendant challenges the plaintiff's version of the facts.

As set forth herein, Defendants Beracy, Bernardo, and Sheridan violated Plaintiff's clearly established constitutional rights, and they had fair notice at the time that their actions constituted constitutional violations against Plaintiff.  As such, qualified immunity must be denied. *See Johnson v. Jones*, 515 U.S. 304 (1995). If this Court disagrees that the Fourth Amendment is applicable, then Defendant Beracy has also violated Plaintiff's Fourteenth Amendment rights for which he is not entitled to qualified immunity.

## C. Count II: Fourteenth Amendment claim

### 1. Excessive force

In the event that the Court disagrees with Plaintiff's claim under the Fourth Amendment, the facts of this case clearly show that Plaintiff's rights under the Fourteenth Amendment Due Process Clause were also violated. Excessive force claims brought under the Fourteenth Amendment are analyzed under the Fourth Amendment "objective reasonableness" test when a detainee has not yet had his probable cause hearing. *Kingsley v. Hendrickson* 135 S. Ct 2466, 2473 (2015). In addition, the conditions under which Plaintiff was forced to reside also constitute a violation of Plaintiff's Fourteenth Amendment rights. As stated in the case of *Carl v. Cnty of Muskegon*, 2016 U.S. Dist. LEXIS 110808 (citing *Estelle v. Gamble* 429 U.S. 97),"it has been well established that

an inmate has a cause of action under §1983 against prison officials for 'deliberate indifference' to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment."

When assessing use of force cases, the Court asks whether a reasonable officer on the scene would have used a similar degree of force. *Smith v. Freeland*, 954 F.2d 343, 345-347 (6th Cir. 1992). In judging objective reasonableness, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham supra* at 397.

### 2.  Conditions of confinement

Claims regarding conditions of confinement ask whether the defendants acted with "deliberate indifference to Plaintiff's serious medical needs."  *Estelle v. Gamble* 429 U.S. 97. Deliberate indifference is established by showing that defendants "were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825. 835 – 837. Under §1983, pretrial detainees have rights to humane conditions of confinement that are analogous to the 8th Amendment rights of prisoners, by virtue of the Due Process Clause of the Fourteenth Amendment. Prison officials violate this right when "(1) the deprivation alleged is, objectively, sufficiently serious… and (2) the officials acted, or failed to act, with a 'sufficiently culpable state of mind' with deliberate indifference to inmate health or safety." *Id.* at 832.

Pursuant to the GRPD Manual, officers must inform personnel at the KCCF when force has been used. **(Ex. L, 9-1.7).** Additionally, officers are required to arrange for appropriate medical care when the use of force causes alleged or actual injury. **(Ex. L, 9-1.7).** Plaintiff was subjected to additional force during booking at the KCCF and yet, no Defendant arranged for Plaintiff to be

seen by a medical professional. Defendants were also aware that Plaintiff defecated on himself twice during his encounters with them. **(Ex. C, p. 77, Ex. L, p. 14)**. Regardless, Plaintiff was forced to sit in his own feces for over five hours and was not permitted the opportunity for a shower until immediately prior to his release on the morning December 8th.  **(Ex. A, p. 125).** This is similar to the case of *Krutko v. Franklin County*, 2014 U.S. Dist. LEXIS 165589, where the Sixth Circuit found that "that exposure to unsanitary conditions, and denial of access to hygiene products and shower facilities violates a clearly established constitutional right."

It is clear from the facts that Defendants had knowledge from which they could infer that Plaintiff was at risk for harm. In addition, Defendants drew the inference that a substantial risk for harm to Plaintiff existed as stated in their depositions. Therefore, Defendants may be held liable under the Fourteenth Amendment.

### 3.  Qualified Immunity

Plaintiff relies upon the arguments and cases cited herein if the court analyzes Defendants actions pursuant to the Fourteenth Amendment in 42 U.S.C. §1983.

## V. <u>CONCLUSION</u>

In light of the evidence and arguments set forth above, there can be no dispute that Defendant's Motions for Summary Judgment must be DENIED in their entirety. Therefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motions for Summary Judgment.

<div style="margin-left: 40%;">

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

BY: <u>/s/ Shawn C. Cabot</u>
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
(248) 698-3321 – fax
shawn.cabot@cjtrainor.com

</div>

Dated: January 26, 2017
SCC/jrr